UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/11/14

---

UNITED STATES OF AMERICA

        -against-

BILL SURI,

                Defendant.

---

09-Cr-1190 (SHS)

---

BILL SURI,

                Petitioner,

        -against-

UNITED STATES OF AMERICA,

                Respondent.

---

13-Cv-8454 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Bill Suri has petitioned this Court pursuant to 28 U.S.C. § 2255 for a writ of habeas corpus to vacate his conviction and sentence. Suri principally contends that his trial and appellate counsel were both constitutionally inadequate. Because the existing record in this case irrefutably contradicts Suri's allegations, the Court denies Suri's petition.

## I. BACKGROUND

Suri was indicted in 2009 of one count of bank fraud in violation of 18 U.S.C. § 1344 and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. Suri entered a plea of not guilty and was tried before a jury over an eight-day period in May 2010. The heart of the government's case was that from 2002 to 2006, defendant Suri conspired with his wife Linda and their son Dustin to defraud banks into providing their struggling cabinet manufacturing business with approximately $2.1 million in financing. The Suris represented that loan proceeds would be

used to purchase inventory and new building equipment, when in fact the loan proceeds were to be used to pay the Suris' personal expenses, cover ongoing business expenses, and repay existing loans. In meetings with bank personnel, Suri and Dustin failed to disclose prior loans, misrepresented their roles in the business, mischaracterized the financial health of the business, and provided fabricated financial statements. Seventeen witnesses testified for the government, including various banks' loan officers, Suri's former employees, and Dustin. (Dustin had pleaded guilty to the charges against him and cooperated with the government prior to trial, and Linda was never prosecuted.) The jury heard hours of audiotaped conversations in which Suri had coached Dustin how to deceive loan officers.

Suri was represented at trial by retained counsel Stewart Orden. The defense's key strategy was to portray Dustin, the government's primary witness, as an unreliable witness with a motive to lie, and as the mastermind behind the scheme. The defense witnesses were Suri himself — who took the stand and testified against Orden's advice — as well as a former employee of the Suris.

The jury returned a guilty verdict against Suri on both counts. Shortly thereafter, Suri's counsel Orden advised the Court in writing of a breakdown in the attorney-client relationship. In Orden's words, Suri "contend[ed] that he was represented ineffectively at trial and that [Orden] failed to present an adequate defense." (Dkt. No. 32.) At a June 17, 2010 hearing, the Court relieved Orden as counsel and appointed Andrew Patel to represent Suri pursuant to the Criminal Justice Act.

Prior to sentencing, Patel filed a motion on Suri's behalf pursuant to Federal Rule of Criminal Procedure 33 to vacate Suri's conviction and dismiss the indictment on the ground that Suri had been incompetent to stand trial (and alternately was incompetent to be sentenced). The motion also put at issue whether prior counsel Orden "should have noticed that Mr. Suri was unable to process and rationally understand" Orden's advice. (Dkt. No. 50, at 9.) Accordingly, the Court "direct[ed] Mr. Orden to submit

2

an affidavit responding to the issues raised in" Suri's motion. (Dkt. No. 66, at 2.) Orden did so in an affirmation dated February 22, 2011, accompanied by more than 600 pages of his notes and copies of e-mail correspondence with Suri. Following an evidentiary hearing, the Court determined that Suri was competent and denied Suri's Rule 33 motion. The Court also rejected the allegations that Orden had been ineffective and concluded that in any event Suri could not establish prejudice because the weight of the evidence against him was "very, very strong." (Mar. 18, 2011 Tr. 17.)

At sentencing, the Court found that Suri was a leader in the fraud scheme, overruling Suri's objection to the contrary. *See* U.S.S.G. § 3B1.1(c). The Court also determined that Suri's trial testimony was "clearly perjurious" and accordingly added two points to Suri's offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The Court found that

> [Suri's] testimony was that he was not involved with obtaining any of the bank loans, that it was Dustin who was running the companies and running the conspiracy to commit bank fraud, that his only involvement was an avuncular one or, actually, a paternal one, to simply try to guide his errant son, and that he, the defendant, never applied for loans. All of that is false. . . . The testimony showed . . . . that he was a leader of the conspiracy and Dustin's role was subordinate to his. . . . [T]he tapes [of Suri's and Dustin's conversations] clearly make that point.

(Apr. 12, 2011 Tr. 14.) The Court sentenced Suri principally to 60 months' imprisonment, significantly below the Guidelines range of 87–108 months. The Court explained that it varied below the Guidelines primarily because of Suri's age and his role as a caretaker for Linda, who was suffering from terminal cancer. (*Id.* at 15–16, 22–23.) In light of Linda's medical condition, the Court also granted Suri's request to remain on bail for six months, a time period that the Court subsequently twice extended before requiring Suri to surrender in March 2012. (*Id.* at 24; Dkt. Nos. 91, 92.)

Suri timely appealed from the judgment of conviction. On appeal, his counsel asserted a single error: that this Court had wrongly determined

that Suri was competent to stand trial. The U.S. Court of Appeals for the Second Circuit rejected that argument and affirmed this Court's judgment in a Summary Order dated February 27, 2012. *See United States v. Suri*, 465 F. App'x 20 (2d Cir. 2012).

On April 2, 2012 Suri moved this Court *pro se* for a modification of his sentence pursuant to Federal Rule of Criminal Procedure 35, based on his wife's medical condition as well as his own. (Dkt. No. 99). This Court denied the motion on April 3. (Dkt. No. 100). Suri appealed *pro se*, and the Second Circuit granted the government's motion for summary affirmance of this Court's April 3 order. *See United States v. Suri*, No. 12-1767 (2d Cir. Apr. 30, 2013).

Among legion other *pro se* post-trial submissions,[1] Suri moved this Court on November 16, 2012 to dismiss the allegedly defective indictment. The Court denied the motion on several grounds, including that the motion was untimely and that each aspect of the indictment that Suri contested was in fact sufficiently particular. (Order dated Jan. 11, 2013, Dkt. No. 112.) Suri then moved *pro se* for a new trial pursuant to Federal Rule of Criminal Procedure 33, on the basis of purported newly discovered evidence. (Dkt. No. 125.) In denying the motion, the Court observed that none of the evidence was in fact newly discovered and also reiterated its "firm conviction . . . that the evidence of Suri's guilt was overwhelming." (Order dated Aug. 9, 2013, Dkt. No. 128.) Suri's consolidated appeal from the Court's January 11, 2013 and August 9, 2013 orders is now pending in

---

[1] *See, e.g.*, letters dated Mar. 26, 2012 (Dkt. No. 113), Apr. 24, 2012 (Dkt. No. 101), July 5, 2012 (Dkt. No. 105), Oct. 17, 2012 (Dkt. No. 106), Dec. 19, 2012 (Dkt. No. 111), Jan. 28, 2013 (Dkt. No. 115), Feb. 6, 2013 (Dkt. No. 117), Apr. 24, 2013 (Dkt. No. 123), May 28, 2013 (Dkt. No. 126), July 19, 2013 (Dkt. No. 133), July 29, 2013 (Dkt. No. 134), Dec. 30, 2013 (Dkt. No. 146), and July 17, 2014 (Dkt. No. 163). The lion's share of these letters sought reductions in Suri's sentence or orders directing the Bureau of Prisons to provide Suri with particular medical care.

the Second Circuit. *See United States v. Suri*, Nos. 13-1149, 13-3223 (2d Cir. Appeals docketed Mar. 29, 2013, Aug. 27, 2013).

Suri filed this motion to vacate his conviction and sentence on November 22, 2013. (Dkt. No. 142.)

## II.  ANALYSIS

An ineffective assistance of counsel claim has two elements. *See Harrington v. Richter*, 131 S. Ct. 770, 787 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *See id.* "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Id.*; *see United States v. Brunshtein*, 545 F. Supp. 2d 357, 359 (S.D.N.Y. 2008). Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Harrington*, 131 S. Ct. at 787. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial." *Id.*

The statute pursuant to which Suri seeks relief provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing." *See* 28 U.S.C. § 2255(b); *see Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011). "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel." *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). The Court need not, however, hold a hearing when a defendant's "assertions are contradicted by the record." *See id.* at 214.

### A.   Trial Counsel's Representation Was Not Constitutionally Ineffective.

Suri levies most of his accusations of ineffective assistance against Orden, his trial counsel. Each of Suri's allegations is thoroughly contradicted by the trial record as well as the extensive e-mail correspondence between Orden and Suri. The Court therefore denies Suri's claims regarding Orden without holding another evidentiary hearing. *See Puglisi*, 586 F.3d at 214.

### 1.   *Counsel Did Not Render Ineffective Assistance in Connection with Suri's Decision Not to Plead Guilty.*

Suri alleges that Orden rendered ineffective assistance because Orden "never explained . . . the mechanics or any aspect of taking a [p]lea. He never informed defendant if he had even received a formal offer from the Government. There was no explanation what[]so[]ever, except making suggestions[] that the defendant should take a plea." (*See* Suri Decl. in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence & Conviction ("Suri Mem.") 7–8.) "Even if [Suri] was disinterested," Suri contends that Orden should have pushed Suri to consider engaging in a plea bargaining process, "for [the] possibility always existed, that after an examination of what . . . a plea agreement [entails]," its pro[s] and con[s] — the defendant may have considered it." (*See* Reply in Supp. of Mot. for Relief Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence & Conviction 21.)

Suri's allegations fail because the record demonstrates that he is not entitled to relief pursuant to either of *Strickland*'s two prongs. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).

Orden has affirmed that on January 4, 2010, among other occasions, he and Suri "discuss[ed] a possible plea. There were repeated attempts to convince Mr. Suri to enter a plea in this matter. It was a question presented nearly every time we met or spoke. . . . While I . . . constantly advised Mr. Suri to consider and take a plea, Mr. Suri was adamant in not discussing the possibility of pleading guilty to anything." (*See* Aff. of Stewart L.

Orden dated Feb. 21, 2011 ("Orden 2011 Aff.") ¶ 18; *see also* Orden Aff. dated Jan. 20 2014 ("Orden 2014 Aff.") ¶ 11 ("Any discussions of any nature regarding a plea were ended swiftly and assuredly by Mr. Suri's rejection at any time of considering a plea. He was adamant in his innocence and equally adamant in refusing to ever discuss a plea, although my notes confirm that a plea and the application of the sentencing guidelines were nevertheless discussed. I have no recollection of any offer by the government regarding a plea.[2]").)

The record evidence corroborates Orden's affirmations. On May 8, 2010, in an e-mail to Suri shortly before trial, Orden summarized inculpatory evidence that the government would likely introduce at trial, and asked: "Are you sure you do not want to work out a plea deal?" (Ex. to Orden 2011 Aff. at 4.) Suri responded in an e-mail about an hour later: "NO WAY NEVER." (*Id.*) In another e-mail from Suri to Orden later that evening, Suri made reference to Orden having "asked . . . re[] a Plea aspect." Suri's response was that Orden should "please ask [the government] TO DROP THE CASE, IT'S A LOSER. I will be glad to take a lunch bet that if the entire truth is out and not skewed by politics and mischief etc, I will win this case hands down." (*Id.* at 46.) The next week, Orden summarized the weight of the evidence against Suri and the likelihood of conviction, imploring: "My last shot: . . . I urge you to reconsider and plead guilty. [I]t is your only chance of lessening your sentence." (*Id.* at 52.) Suri responded: "I am NOT AT ALL GUILTY . . . BELIEVE ME IF I HAD EVEN THOUGHT OF ME BEING 10% GUILTY, I would have thrown in the towel by now." (*Id.* (capitalization as in original).)

Notably, Suri's petition does not allege that Orden provided inaccurate advice regarding pleas; that Orden failed to convey any actual

---

[2] Assistant U.S. Attorney Lee Renzin has declared that he and the other prosecutors on Suri's case have "no recollection of the Government making a plea offer to Bill Suri." (*See* Decl. of Lee Renzin dated Jan. 31, 2014 ¶¶ 3–5.)

plea offers, whether formal or informal; or that Orden misinformed Suri regarding what the government would have to prove to obtain a conviction or his potential sentencing exposure or. *Cf. Lafler*, 132 S. Ct. at 1384; *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("Defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); *Purdy v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000).

Instead, Suri takes issue with Orden's failure successfully to shake Suri of his adamant refusal to consider a plea offer. The record firmly establishes that Suri was insistent on proceeding to trial, and Orden had an obligation to permit Suri to do so. *See, e.g.*, *Purdy*, 208 F.3d at 45 (counsel has "an affirmative duty to avoid exerting undue influence on the accused's decision" whether to plead guilty "and to ensure that the decision . . . is ultimately made by the defendant"); *see also Beras v. United States*, 2013 WL 11555415, at *19 (S.D.N.Y. Mar. 20, 2013) ("Counsel's failure to persuade [petitioner] to plead guilty cannot, without more, constitute unreasonable performance under *Strickland*. The choice of whether to plead guilty was [petitioner's] to make."). In short, given the record in this case, Suri has not plausibly alleged any facts that, if true, would establish that Orden rendered ineffective assistance in counseling him about the plea process.

Suri's allegations regarding Orden's plea advice also fail *Strickland*'s prejudice prong. To establish prejudice "in the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *See Lafler*, 132 S. Ct. at 1384. In a case in which a defendant proceeds to trial because of constitutionally ineffective advice relating to a plea, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have been presented to the court (*i.e.*, *that the defendant would have accepted the plea* and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence or both . . . would have been less severe

8

than under the judgment and sentence that in fact were imposed." *See id.* at 1385 (emphasis added).

Suri has not plausibly alleged that he would have accepted any actual plea offer. First, the record demonstrates that no plea offer was made. (*See* Renzin Decl. ¶¶ 3–5.) In the complete absence of any plea offer, the possibility of prejudice from counsel's alleged ineffective counseling about pleas "simply does not arise." *See Lafler*, at 132 S. Ct. at 1387. Second, the record clearly dispels Suri's suggestion that there was *any* possibility, let alone a "reasonable probability," that he would have accepted any hypothetical plea offer. *Cf. id.* at 1385. The e-mails excerpted above, in each of which Suri expressed his resolute opposition to pleading guilty, vitiate the possibility that Suri could demonstrate prejudice under *Strickland* and *Lafler*.

> ### 2. Suri Is Not Entitled to Relief on the Ground that Counsel's Trial Preparation or Performance Were Constitutionally Ineffective.

Suri's remaining claims regarding his trial counsel fail both because the record conclusively demonstrates that his counsel did not render ineffective assistance before or during trial and because Suri cannot demonstrate prejudice.

> #### a. Counsel's Trial Preparation and Trial Performance Were Not Constitutionally Ineffective.

"Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *See Harrington*, 131 S. Ct. at 789. Orden's strategic decisions before and during trial were well within the bounds of constitutionally permissible choices and Suri's contentions to the contrary are meritless:

**1.** Suri contends that Orden had a "conflict of interest in that he was more concerned about his upcoming family affair in Hawaii" than Suri's case, which caused Orden to neglect trial preparation. (Suri Mem. 7.)

9

At an April 5, 2010 pretrial conference, Orden asked the Court to advance the trial date by one week, from May 24 to May 17, 2010, because Orden had plans to "celebrat[e his] son's ba[r] mitzvah with a trip on June 29." (Apr. 5, 2010 Tr. 2–3.) Orden and the prosecution agreed that the trial would not likely last more than three weeks, but Orden requested the earlier trial date out of an abundance of caution. (*Id.* at 2–4.) The Court granted Orden's request.

Suri has not set forth any facts to support his allegation that Orden's travel plans caused him to neglect trial preparation. Counsel's decision to request an earlier trial date fully six weeks in advance of the new trial date reflects diligence, not negligence.

**2.** According to Suri, Orden failed to review the government's document productions before trial. As an initial matter, Suri has not identified any document "with which his counsel [was] unfamiliar." *See Prousalis v. United States*, 2007 WL 2438422, at *10 (S.D.N.Y. Aug. 24, 2007). The record also flatly contradicts Suri's allegation. At the April 5 pre-trial conference, Orden explained that he had already "been through the" government's document productions to date "many times." (Apr. 5, 2010 Tr. 4.) Orden's pre-trial e-mail correspondence with Suri amply demonstrates his familiarity with the government's document productions. (*See generally* Ex. to Orden 2011 Aff..; *see also* Orden 2011 Aff. ¶ 7.)

**3.** Suri takes issue with the fact that Orden purportedly met with him for only "4 short hours" prior to trial and did so in at the "reception counter area" at a Hyatt Hotel in midtown Manhattan. (Suri Mem. 9).

There is no "minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel." *See United States v. Mealy*, 851 F.2d 890, 909 (7th Cir. 1988). The hundreds of pages of e-mails that Orden and Suri exchanged leave no doubt that Orden communicated with Suri sufficiently to enable Suri to participate in his defense. As the Court observed after holding an

evidentiary hearing on Suri's first Rule 33 motion, Suri "participated vigorously in his defense, both pretrial and [during] the trial, and has consulted regularly with his lawyers . . . regarding, among other things, potential witnesses to call on his behalf, questions to ask them, pretrial motions to make or not make, the trial strategy in regard to defenses to be raised and trial in general." (Mar. 18, 2011 Tr. 6.) In that connection, the Court credited Orden's 2011 affidavit, which referred to Suri as a "constantly interested and motivated client who sent dozens of e-mails and regularly telephoned." (*Id.* at 7.) The record reflects that Orden regularly responded to those e-mails and also initiated meetings with Suri. (*See generally* Ex. to Orden 2011 Aff.; *id.* at 32.) As for the location of Orden and Suri's meetings, Orden has affirmed that Suri preferred the Hyatt to Orden's office because of Suri's "difficulty with walking" and because of the health problems of Linda, whom Suri insisted attend their meetings with Orden. (Orden 2011 Aff. ¶ 9.) The meetings took place not at the reception counter but "on the second floor in a private area," never "within earshot of any other persons, other than Linda Suri." (*Id.* ¶ 8.) Suri's e-mails confirm that Suri regularly requested that his meetings with Orden take place at the Hyatt. (*E.g.*, Ex. to Orden 2011 Aff. at 32.)

**4.** Next, Suri asserts that Orden was ineffective for failing to move to dismiss the indictment on the grounds that it was defective and because Suri was "factually innocent of all charges." (Suri Mem. 9.) The decision to file pretrial motions is left to the sound discretion of counsel, not the defendant. *See United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987). The Court has already denied on the merits Suri's post-trial motion to dismiss the allegedly ineffective indictment. (Order dated Jan. 11, 2013, Dkt. No. 114.) Any such pre-trial motion would have been equally meritless. As for the purported innocence ground, a "technically sufficient indictment . . . 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.'" *See United States v. Laurent*, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011) (quoting *United States v. Alfonso*, 143

11

F.3d 772, 776–77 (2d Cir. 1998)). Counsel's decision not to move to dismiss the indictment was well within the bounds of reasonable trial strategy.

**5.** Suri argues that his counsel "failed to make proper discovery," to arrange "d[e]positions," and to obtain Jencks Act material and "exculpatory evidence that [the g]overnment had in its possession." (Suri Mem. 10–11.) But Suri fails to identify any material that the government failed to turn over or any discovery that Orden should have conducted. And the record reflects that Orden made reasonable, strategic decisions to pursue the trial preparation strategy he saw most appropriate, such as his decision to subpoena Dustin's mental health records, in recognition of the fact that Dustin's credibility would be a key issue in the case. (*See also* Orden 2014 Aff. ¶ 9 (before trial Orden interviewed various witnesses, "not one of whom was helpful to Mr. Suri's cause and in most instances confirmed the government['s] view of him.").)

**6.** Turning to Orden's conduct at trial: Suri alleges that Orden was ineffective for failing to object or move for a mistrial on the basis of the government's opening statement and summation to the jury. (Suri Mem. 11, 15–21, 26–27.) The Court has reviewed the government's opening statement and summations and concludes that the prosecution made no statements for which Orden was ineffective for failing to object. Because the government committed no error in referring to that evidence, Orden was not ineffective for failing to object. *See United States v. Myerson*, 18 F.3d 153, 163 (2d Cir. 1994) (counsel are "entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence").

**7.** Suri's related contention that Orden should have objected to testimony from witnesses concerning conduct that occurred after the conspiracy was alleged to have concluded (*see* Suri Mem. 11–12, 29) is meritless both because Orden in fact filed a motion *in limine* on that ground, and the Court did limit the extent to which the government could elicit such testimony. (*E.g.,* Trial Tr. 910, 946.)

**8.** Suri also argues in passing that Orden failed to object to the testimony of witnesses who did not have personal knowledge of the "type of equipment" used at the Suris' business and the purchase dates and costs of that equipment. (Suri Mem. 29.) Suri fails to specifically identify any objectionable testimony. In fact, Orden objected when the prosecution's questions about Suri's shop equipment arguably invited speculation or answers beyond the witnesses' own knowledge. (Trial Tr. 650:23–651:3, 651:19–20, 652:22–25, 715:1–11.)

**9.** Suri does not identify any witness whom he contends the government "br[ought] in . . . at the last moment without any prior notification," (Suri Mem. 12), and the Court will therefore not address that conclusory allegation.

**10.** Suri claims the case against him was based on the theory that he lacked an actual, "[on]going business, a business in operation" and that his trial counsel was ineffective for not introducing evidence that proved he had a functioning business. (Suri Mem. 10.) He is mistaken: the prosecution's case was based on Suri's lies to banks (Trial Tr. at 10–13, 17) and counsel was not ineffective because he failed to address an argument that was not made against him.

**11.** The notion that Orden prevented Suri from "mak[ing his] case when on the witness stand," *id.* at 13, is entirely belied by the fact that against counsel's advice, *see* Orden 2011 Aff. ¶ 22, Suri testified at length, *see* Trial Tr. 1202–71, frequently in narrative form and uninterrupted by counsel, *see* Trial Tr. 1205–07, 1212, 1214–16, 1218–19, 1222, 1230–31.

**12.**  Suri contends that Orden "should have been able to convince" this Court and the government "that Dustin was an unreliable witness who should have been barred from testifying." (Suri Mem. 8.) Suri identifies no legal reason for that assertion and the Court is aware of none. Orden reasonably decided to attack Dustin's credibility. (*See, e.g.*, Trial Tr. 24 (Orden's opening statement) ("Dustin Suri is an inveterate, compulsive liar for his entire life from the petty to the large. And I'm not saying this

because how I cross-examine him and the manner in which he answers will show it, although it might . . . but I will prove it because he will admit it."); *id.* at 24–27; *id.* at 992–1059 (cross examination of Dustin regarding dozens of statements and incidents — many of which Dustin admitted amounted to "lie[s]," theft, or fraud — and regarding Dustin's agreement to cooperate with the prosecution).) Orden also successfully moved *in limine* to preclude Dustin from referring to alleged abuse at the hands of his father as a reason for Dustin's various admitted "lies." (*See id.* at 821.)

**13.** There is no evidence that the jurors "want[ed] to leave . . . early [for any] [M]emorial" Day vacations, and that Orden accordingly should have requested an adjournment from the afternoon of Thursday May 27, when the government rested its case, until Tuesday June 1 for the defense to begin presentation of its case. (Suri Mem. 13.) The record instead reflects that the Court adjusted the trial schedule for jurors who had out-of-court obligations. (*E.g.*, Trial Tr. 93–94.)

**14.** Suri identifies no basis as to which Orden ostensibly should have filed a Rule 33 motion. (Suri Mem. 13.) The Court has already denied the two Rule 33 motions that Suri did file after trial.

For these reasons, the record conclusively demonstrates that Orden was not constitutionally ineffective in any of the respects that Suri alleges. *See Harrington*, 131 S. Ct. at 789; *Puglisi*, 586 F.3d at 214.

> b. *None of Suri's Asserted Errors Regarding Trial Counsel's Performance Would Have Been Prejudicial.*

The Court also denies Suri's claim regarding Orden's ineffective trial preparation and performance on the independent ground that Suri cannot demonstrate that any such errors — even considered cumulatively — could have caused Suri prejudice. *See Strickland*, 466 U.S. at 697.

As the Court has previously written, the "evidence of Suri's guilt was overwhelming." (*See* Order dated Aug. 9, 2013; *see also* Aug. 25, 2010 Tr. 3 (referring to the "really quite substantial" evidence of Suri's guilt); Mar. 18, 2011 Tr. 17–19 (noting the "overwhelming nature of the proof"); Apr. 12,

2011 Tr. 18 (describing the "very blatant, lengthy, and ongoing fraud orchestrated by Mr. Suri").) For example, the jury heard extensive testimony that Suri directed his employees to create fake financial statements that Suri then used to obtain bank financing. (Trial Tr. 542, 731–32, 773–79.) Dustin testified that Suri coached him in applying for loans with fraudulent paperwork. (*Id.* at 850–55, 881–85; *id.* at 855 ("This is where you lie here, this is . . . how you answer this.").) Suri's own trial testimony about his lack of involvement with the loan applications was directly contradicted by extensive recorded conversations among Suri, Dustin, and Linda, during which Suri repeatedly and egregiously instructed Dustin what materially false statements to make to bank employees and how to answer loan officers' questions so as to avoid suspicion.

Accordingly, even were there a basis to assume that Orden's performance fell below Sixth Amendment standards in any of the respects that Suri alleges, there is simply no "reasonable probability" that absent the purported errors the jury "would have had a reasonable doubt respecting guilt." *See Strickland*, 466 U.S. at 695.

### B.   Suri's Counsel at Sentencing and on Appeal Was Not Constitutionally Ineffective.

Suri also alleges that Andrew Patel, Suri's attorney at sentencing and on appeal, failed to provide constitutionally effective representation. The Court denies these claims without an evidentiary hearing because the existing record conclusively demonstrates that Suri is not entitled to habeas relief.

### 1.   *Suri Did Not Lack Effective Assistance at Sentencing.*

Contrary to Suri's contention, his counsel did in fact object in writing to sentencing enhancements pursuant to U.S.S.G. § 3B1.1(c) for Suri's role and pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. (*See* Dkt. Nos. 79, 81; *cf.* Suri Mem. 23–24.) In fact, at sentencing, the Court acknowledged that "Mr. Patel made a very thorough and very well done presentation in

15

the papers." (Apr. 12, 2011 Tr. 13.) Accordingly, Suri's contention that Patel was ineffective at the hearing for failing to reiterate his written objections is unfounded.

Suri similarly argues that at the sentencing hearing, Patel "did not raise any of the issues that had been prior discussed with the defendant and his wife." (Suri Mem. 4.) Suri does not identify any issue that Patel failed to raise either in the sentencing memorandum or at the hearing. Moreover, although an "attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy . . . [t]hat obligation . . . does not require counsel to obtain the defendant's consent to every tactical decision." *See Florida v. Nixon*, 534 U.S. 175, 187 (2004). Patel's strategic decisions at sentencing were well within the constitutionally permissible range.

On April 3, 2012, this Court denied Suri's *pro se* Rule 35 motion on the merits and without regard to that motion's untimeliness. (Dkt. No. 100, at 1.) His counsel was therefore not ineffective for failing to make that meritless motion on Suri's behalf within fourteen days of the entry of the judgment of conviction. (*Cf.* Suri Mem. 24–25.)

### *2. Suri Was Not Deprived of Effective Assistance on Appeal.*

"To prove ineffective assistance of appellate counsel, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *See Cuoco v. United States*, 208 F.3d 27, 32 (2d Cir. 2000). To prevail, Suri must show both "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker" and that "absent counsel's deficient performance . . . there was a reasonable probability that his claim would have been successful" on appeal. *See Mayo v. Henderson*, 13 F.3d 528, 533–34 (2d Cir. 1994) (alterations omitted).

As noted above, the only issue raised on appeal from Suri's judgment of conviction was that this Court erred in concluding that Suri was

16

competent to stand trial. The Court credits Patel's declaration that "[a]fter a complete review of the record and discussion with other counsel, in [his] professional opinion," the competence issue "was the only 'meritorious' issue that could be raised on appeal." (*See* Decl. of Andrew G. Patel dated Jan. 27, 2014 ¶ 3.) Suri's contentions to the contrary are entirely without support in the record.

First, given this Court's variance well below the Guidelines range — from 87–108 months' to 60 months' imprisonment in light of Suri's age and his wife's health — there was neither a reasonable basis for challenging the sentence on appeal nor a reasonable probability that the Second Circuit would have vacated the sentence imposed. (*Cf.* Suri Mem. 23–25.)

Second, for the reasons discussed above, there was no basis for raising on appeal the frivolous argument that the prosecution engaged in misconduct during its opening statement or summations, nor could Suri establish prejudice on that ground. (*Cf. id.* at 23.)

Third, Suri has alleged in only the most conclusory fashion that the prosecution engaged in misconduct by eliciting "hearsay testimony" or violating Suri's "confrontation rights." (*See id.* at 23.) Suri has not alleged facts sufficient to establish "a reasonable probability" that his conviction would have been reversed based on this boilerplate assertion.

In sum, Suri was not deprived of his Sixth Amendment right to effective assistance of counsel at sentencing and on appeal. *See Cuoco*, 208 F.3d at 32.

### C.   Suri Is Not Entitled to Habeas Relief on the Ground that He Is Actually Innocent.

In this collateral proceeding, to "establish actual innocence, petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In this context, "'actual innocence' means factual innocence, not merely legal insufficiency." *See id.* Suri fails to allege any facts that, even if proven, would establish that he is factually innocent

of committing bank fraud and conspiring to commit bank fraud. His bald allegations that the government "coerc[ed]" Dustin and other unspecified witnesses to suborn perjury are utterly conclusory and belied by the extensive documentary evidence, including the several hours of audiotapes during which Suri blatantly coached Dustin to act in furtherance of the conspiracy to commit bank fraud. (*Cf.* Suri Mem. at 26–31.) The Court therefore denies Suri's actual innocence claim. *See Bousley*, 523 U.S. at 623.

> **D.  Suri Is Not Entitled to Habeas Relief on the Grounds Raised in His Reply Memorandum.**

In his reply memorandum, Suri formulates a potpourri of contentions, which are essentially reformulations of the assertions in the petition. The Court denies those that are not reformulations both because they are late-raised, *see Jones v. Murphy*, 694 F.3d 225, 248 (2d Cir. 2011), and because they lack merit.

## III. CONCLUSION

The petition is denied. *See Puglisi*, 586 F.3d at 215. Because Suri has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated:  New York, New York
       August 11, 2014

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

18